UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Victor G. Hall,

        Petitioner,

        v.                                      Civil Action No. 5:14-cv-84

William H. Sorrell, Attorney General,

        Respondent.

## <u>REPORT AND RECOMMENDATION</u>
(Docs. 1, 8, 10)

        Victor Hall, a Vermont inmate proceeding *pro se*, has filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.  (Doc. 1.)  Hall is currently serving a state sentence of ten to fifty years after pleading guilty in 2007 to two counts of aggravated sexual assault on a child under ten years of age.  In his Petition, Hall asserts four grounds for relief: (1) he was denied his right to a speedy trial; (2) ineffective assistance of trial and appellate counsel; (3) involuntary guilty plea; and (4) insufficient evidence to support conviction.  Respondent moves to dismiss Hall's Petition on the grounds that it is time-barred.  (Doc. 8.)  Hall has filed an opposition (Doc. 9), a Motion to Appoint Counsel (Doc. 10), a supplemental opposition (Doc. 12), and a "Motion to Deny State's Motion to Dismiss" (Doc. 13).  For the reasons set forth below, I recommend that Respondent's Motion to Dismiss (Doc. 8) be GRANTED, Hall's Motion to Appoint Counsel (Doc. 10) be DENIED as moot, and Hall's Petition (Doc. 1) be DISMISSED.

## Factual Background

As discussed more fully below, Hall insists that he is innocent.  For present purposes only, I include here the Vermont Supreme Court's summary of the evidence supporting the charges against Hall:

> In May 2006, defendant was charged with two counts of aggravated sexual assault against his stepdaughter, who was under the age of ten at the time, and one count of lewd and lascivious conduct with the same victim.  The affidavit of probable cause in support of the charges recounted that defendant had revealed the offenses to his wife several years after their occurrence; that defendant and his wife had subsequently disclosed the incidents to the Department for Children and Families, which contacted the police; and that defendant thereafter acknowledged having sexual contact with his stepdaughter during an interview with the Chittenden Unit for Special Investigations investigating officer.  Defendant was later charged with several additional counts of possession of child pornography and one count of obstructing justice based upon a threatening letter to his wife.

*State v. Hall*, No. 2008-086, 2008 WL 4906948, at *1 (Vt. Nov. 5, 2008) (unpublished mem.).[1]  Hall's competing factual assertions are set forth in the discussion of his claim of actual innocence below.

## Procedural History

Since Respondent's Motion to Dismiss concerns the timeliness of Hall's Petition, it is necessary to recount the procedural history in this case and related cases in some detail.  Hall is currently serving a state sentence of ten to fifty years after pleading guilty in 2007 to two counts of aggravated sexual assault on a child under ten years of age.  Prior to sentencing, Hall sought to withdraw his guilty plea (*see* Doc. 7-3 at 23–24), and the trial court denied that motion, concluding that the motion was part of a scheme to

---

[1]  The affidavit of probable cause appears in this court's record in Document 7-3 at 13–16.

manipulate the proceedings (*see* Doc. 7-10 at 47–48).  Hall appealed that denial, and the Vermont Supreme Court affirmed.  *State v. Hall*, No. 2008-086, 2008 WL 4906948 (Vt. Nov. 5, 2008) (unpublished mem.).

Hall filed a motion for reargument in the Supreme Court on November 24, 2008, and on December 11, 2008 the Supreme Court denied that motion as untimely under V.R.A.P. 40, which requires motions to reconsider be filed within 14 days.  (Doc. 8-1 at 1.)  Hall then moved for reconsideration of that denial, which the Supreme Court denied on February 4, 2009, reasoning that the original motion for reargument was untimely filed, and that Hall had "failed to demonstrate a compelling reason to overturn or disturb the November 5, 2008 decision."  (Doc. 8-2 at 1.)  Hall filed a renewed motion for reconsideration, and the Supreme Court denied that motion on November 5, 2009, again concluding that Hall's motion for reargument was untimely, and that there was no compelling reason to reconsider.  (*Id.*)  In its November 5, 2009 Entry Order, the Supreme Court concluded: "This Court will not consider any further motions for reconsideration or reargument concerning this matter."  (*Id.*)

On December 18, 2009, Hall filed a *pro se* petition for post-conviction relief ("PCR") in the Vermont Superior Court.  (*See* Doc. 7-5.)  On December 23, 2009, while his state-court PCR case was still pending, Hall filed a *pro se* petition for habeas relief in this court under 28 U.S.C. § 2254.  Petition, *Hall v. Sorrell*, No. 1:09-cv-291 (D. Vt. Dec. 23, 2009), ECF No. 6.  On April 7, 2010, I issued a Report and Recommendation in that case, noting that Hall's petition contained a mix of exhausted and unexhausted claims, and recommending dismissal without prejudice in light of Hall's desire to withdraw his

3

petition in order to exhaust his claims in Vermont state court.  *Hall v. Sorrell*, No. 1:09-cv-291, 2010 WL 1740816, at *1 (D. Vt. Apr. 7, 2010).  The April 7, 2010 Report and Recommendation specifically noted as follows:

> If the Court does not include motions for reconsideration in its calculation, Hall's conviction became final in February 2009, 90 days after the Vermont Supreme Court's November 5, 2008 decision affirming his conviction.  *See Williams v. Artuz*, 237 F.3d 147, 150–51 (2d Cir. 2001).  The limitations period for filing a federal petition was then tolled when Hall filed his state court post-conviction relief petition on December 18, 2009, and will remain tolled until the state court petition is resolved. . . .
>
> If Hall's state court petition is unsuccessful, he will have ample time in which to return to this Court.  Indeed, he has already filed his state court petition, and states in his "Accord" that he is fully prepared to file a subsequent § 2254 petition "if Petitioner's PCR case in state court is denied."

*Id.* at *2–3.  On April 28, 2010, the District Court adopted my Report and Recommendation and dismissed Hall's habeas petition without prejudice.  *Hall v. Sorrell*, No. 1:09-cv-291, 2010 WL 1740819, at *1 (D. Vt. Apr. 28, 2010).

Hall's state-court PCR case went forward.  On September 13, 2011, the Superior Court granted the State's motion for summary judgment with respect to Hall's non-jurisdictional claims.  (*See* Doc. 7-10 at 3–4.)  On October 2, 2012, the Superior Court granted summary judgment to the State on Hall's ineffective-assistance-of-counsel claim.  (*See id.* at 5–12.)[2]  Hall appealed from the October 2, 2012 decision, and the Vermont Supreme Court affirmed.  *In re Hall*, No. 2013-062, 2013 WL 9055937 (Vt. Dec. 18, 2013) (unpublished mem.).  On January 13, 2014, the Supreme Court denied Hall's

---

[2] On January 3, 2013, the Superior Court denied Hall's motion to reconsider the October 2, 2012 decision.  (*See id.* at 13.)

motion to reargue on the grounds that the motion "fails to identify points of law or fact overlooked or misapprehended by this Court."  (Doc. 7-13 at 1.)  Hall filed the present § 2254 petition on April 28, 2014.

<u>Analysis</u>

**I.    AEDPA's Limitations Period and Statutory Tolling**

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), "[a] 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court."  28 U.S.C. § 2244(d)(1).  The one-year limitations period starts from the latest of:

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

*Id.*  "Direct review" under subparagraph (A) includes direct review by the United States Supreme Court via a writ of certiorari, so "the limitations period for state prisoners . . . begins to run only after the denial of certiorari or the expiration of time for seeking certiorari."  *Williams v. Artuz*, 237 F.3d 147, 151 (2d Cir. 2001).

A.      **Section 2244(d)(1)(A)**

The Vermont Supreme Court affirmed Hall's conviction in *State v. Hall*, No. 2008-086, on November 5, 2008.  Hall subsequently filed multiple motions for reargument or reconsideration in the Vermont Supreme Court, the latest of which that court denied on November 5, 2009.  However, for the reasons discussed below, none of those motions impacted the date on which judgment became final for the purposes of 28 U.S.C. § 2244(d)(1)(A).  The applicable United States Supreme Court rule at the time provided as follows:

> The time to file a petition for a writ of certiorari runs from the date of entry of the judgment or order sought to be reviewed, and not from the issuance date of the mandate (or its equivalent under local practice).  But if a petition for rehearing is *timely* filed in the lower court by any party, or if the lower court appropriately entertains an untimely petition for rehearing or *sua sponte* considers rehearing, the time to file the petition for a writ of certiorari for all parties (whether or not they requested rehearing or joined in the petition for rehearing) runs from the date of the denial of rehearing or, if rehearing is granted, the subsequent entry of judgment.

Sup. Ct. R. 13 (eff. May 2, 2005) (emphasis added).  Here, the Vermont Supreme Court determined that none of Hall's motions for reargument or reconsideration were timely. The Vermont Supreme Court also did not entertain the untimely petitions for rehearing or *sua sponte* consider rehearing.

I therefore conclude that the 90-day period for seeking certiorari ran from the date Hall's conviction was affirmed (November 5, 2008), rather than from any of the dates of the denials of his subsequent motions for rehearing or reconsideration.  *See Riley v. Motley*, No. 05-313-KKC, 2006 WL 3861768, at *3 (E.D. Ky. June 22, 2006) ("Pursuant to Rule 13 of the Rules for the United States Supreme Court, the 90-day period for

6

seeking certiorari ran from the date Riley's conviction was affirmed on August 26, 2004, rather than from the date of denial of his untimely petition for rehearing."), *adopted* 2007 WL 44008 (E.D. Ky. Jan. 3, 2007). This conclusion is consistent with the court's suggestion in Hall's 2009 habeas case that the motions for reconsideration would not be included in the calculation, and that Hall's conviction became final in February 2009.

Accordingly, Hall's one-year period for seeking habeas relief began running on February 3, 2009, and continued running until he filed his state-court PCR petition on December 18, 2009. *See* 28 U.S.C. § 2244(d)(2) ("The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.").[3] Thus, when Hall filed his PCR petition on December 18, 2009, the limitations period for filing a federal habeas petition had run for approximately ten and a half months. Notably, Hall's PCR petition did not reset the one-year limitations clock; it only stopped the clock from running while the PCR petition was pending. *See Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000) (per curiam) ("[P]roper

---

[3] Hall suggests that his 2009 habeas petition—filed on December 23, 2009 and dismissed without prejudice on April 28, 2010—might have tolled the limitations period. (*See* Doc. 9 at 4–5.) At least insofar as tolling under 28 U.S.C. § 2244(d)(2) is concerned, that argument is without merit. *See Duncan v. Walker*, 533 U.S. 167, 181–82 (2001) (holding that "an application for federal habeas corpus review is not an 'application for State post-conviction or other collateral review' within the meaning of 28 U.S.C. § 2244(d)(2)"). However, the Second Circuit has made it clear that under "appropriate circumstances," the fact of an earlier pending federal habeas petition might be grounds for equitable tolling. *Rodriguez v. Bennett*, 303 F.3d 435, 438 (2002). I consider equitable tolling below, but conclude here that Hall's 2009 habeas petition is no basis for such tolling. Here, Hall had already filed his PCR case at the time he filed his 2009 habeas petition, and his PCR case was still pending after the court dismissed the habeas petition without prejudice in April 2010. The limitations period was already tolled for the entire duration of Hall's 2009 federal habeas case, and thus the habeas case adds nothing to the equitable tolling calculus.

calculation of Section 2244(d)(2)'s tolling provision excludes time during which properly filed state relief applications are pending *but does not reset the date from which the one-year statute of limitations begins to run*." (emphasis added)).

Hall's PCR petition remained "pending" (and the limitations period remained tolled) until the Vermont Supreme Court denied Hall's motion for rehearing on January 13, 2014.[4]  At that time, the limitations period for filing a habeas petition began running again, with approximately one and a half months of time remaining.  The limitations period ended in late February 2014.  Hall filed his § 2254 petition on April 28, 2014—approximately two months too late.

### B.     Section 2244(d)(1)(B)

The State asserts (Doc. 8 at 5 n.1) that only 28 U.S.C. § 2244(d)(1)(A) applies in this case.  There is indeed no allegation or indication suggesting that subparagraphs (C) or (D) might apply in this case.  Hall contends, however, that the bulk of the 10-month delay prior to bringing his PCR case was not his doing, but was in fact caused by the Vermont Defender General and Prisoner's Rights Office ("PRO").  To the extent that Hall seeks to invoke § 2244(d)(1)(B), I conclude for the reasons below that that subparagraph does not apply.

---

[4]  Unlike Hall's motions for rehearing and reconsideration on direct appeal, his motion for rehearing in his PCR appeal was apparently properly and timely filed, since the Vermont Supreme Court denied that motion solely on the ground that it lacked merit.  This case is therefore different than *Saunders v. Senkowski*, 587 F.3d 543 (2d Cir. 2009) (per curiam).  In *Saunders*, the Second Circuit held that "the one-year AEDPA limitations period is not tolled by the thirty-day period in which the petitioner could have filed, *but did not file*, a motion for reconsideration of the New York State court's denial of his post-conviction motion under New York Criminal Procedure Law § 440.10."  *Saunders*, 587 F.3d at 549 (emphasis added).  Here, Hall *did* file a timely motion for rehearing, and thus his PCR petition remained "pending" until the Vermont Supreme Court denied that motion.

According to Hall, he learned that his direct appeal was denied when he received the denial in the mail on November 10, 2008, and on December 4, 2008 he wrote to the Vermont Defender General and the PRO seeking guidance on starting the PCR process. (Doc. 9 at 4.)  Hall says that he wrote the Defender General ten times between December 4, 2008 and December 11, 2009, but was never told that "all I had to do was file an application myself and then the court would assign someone from PRO to assist me." (*Id.*)  Hall asserts that "[f]or over a year, the Defender General's Office and Prisoner's Rights Office stalled my filing a PCR by not informing me on how to proceed, and nobody informed me that the time to file a Habeas was ticking away."  (*Id.* at 5.)

In order for § 2244(d)(1)(B) to apply, "'a petitioner must show that (1) he was prevented from filing a petition (2) by State action (3) in violation of the Constitution or federal law.'"  *Caldarola v. Capra*, No. 12 Civ. 6133(ER), 2013 WL 5328197, at *15 (S.D.N.Y. Sept. 6, 2013) (quoting *Rush v. Lempke*, No. 09-CV-3464 (JFB), 2011 WL 477807, at *9 (E.D.N.Y. Feb. 2, 2011)).  I cannot conclude that the PRO's alleged failure to advise Hall about how to proceed with a PCR petition constituted an "impediment." Hall does not allege that he received bad advice from the PRO.  *See Holder v. Byrd*, No. 2:12-CV-148-KS-MTP, 2013 WL 4519333, at *1 (S.D. Miss. Aug. 26, 2013) (bad advice from Inmate Legal Assistance Program could constitute an impediment to filing, and courts should develop facts surrounding such allegations).  Neither does he allege that he suffered from a disability that rendered him unable to determine how to proceed without assistance.  *See Allen v. Houston*, No. 4:07CV3036, 2007 WL 1560325, at *4–5 (D. Neb. May 29, 2007) (where prisoner with undisputed mental disability was unable to file a

petition for post-conviction relief without assistance, there was a genuine issue regarding whether the filing of a petition was impeded by failure to provide assistance).  And Hall does not assert that, due to lack of legal research materials (such as a copy of Title 13 of the Vermont Statutes Annotated), it was impossible for him to determine how to proceed for himself.  Indeed, Hall states that even before he contacted the PRO he had already determined that he wanted to start the PCR process.[5]

Rather, Hall simply alleges that the PRO did not inform him how to proceed with filing a PCR case.  That is insufficient.  *See Pujas v. Pennsylvania*, Civil Action No. 12-5774, 2013 WL 4774491, at *6 (E.D. Pa. Sept. 6, 2013) (concluding that alleged failure to advise petitioner of his appeal rights was not an "impediment"); *Scott v. Comm'r of Corr.*, No. 3:07-CV-1420(CSH), 2008 WL 5172644, at *2–3 (D. Conn. Dec. 10, 2008) (prisoner who received no assistance in filing state petition did not face an "impediment" for purposes of § 2244(d)(1)(B)).  Neither was the PRO's alleged failure to mention AEDPA's "ticking" clock an "impediment."  *See Killimayer v. Rock*, No. 12-cv-6328 (NSR)(LMS), 2013 WL 5586651, at *10 (S.D.N.Y. Oct. 9, 2013) ("Petitioner's allegation that a prison law clerk's failure to advise him of AEDPA's existence does not, without more, constitute a violation of the state's obligations, because he has failed to show that this omission prevented him from filing a federal habeas petition.").  I therefore conclude that 28 U.S.C. § 2244(d)(1)(B) does not apply.

---

[5]  Vermont law specifically makes it simple to commence a PCR case.  *See* 13 V.S.A. § 7132 (stating that a motion for post-conviction relief "may be informal").  To the extent that Hall argues that he was not advised that he could file a PCR petition before seeking counsel, that argument is blunted by the fact that Hall already knew he wanted to pursue a PCR case, and Vermont's PCR statute explicitly states that the court may appoint counsel (which, obviously, it would not do until a case was commenced).  13 V.S.A. § 7137.

## II.    Equitable Tolling

"AEDPA's statute of limitations is not jurisdictional and does not set forth an inflexible rule requiring dismissal whenever its clock has run." *Rivas v. Fischer*, 687 F.3d 514, 537 (2d Cir. 2012) (citation and internal quotation marks omitted). "Rather, the limitations period in § 2241(d) is subject to equitable tolling in appropriate cases— specifically, were the petitioner shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Id.* (citation and internal quotation marks omitted). Hall argues that there are "exceptional circumstances" that should excuse his untimely filing. (Doc. 9 at 3.) Specifically, he asserts that he "didn't know that the one-year deadline started after the appeal instead of after all state remedies have been exhausted." (*Id.*) He also argues that the delay in bring the state-court PCR case was not his fault. (*Id.* at 4.)

### A.    Hall's Alleged Misunderstanding Regarding the Limitations Deadline

Hall says that he thought the one-year limitations period started after he had exhausted all of his remedies in state court, including his state PCR case. (*See* Doc. 9 at 3.) As noted above, that is not how the limitations period works. *See Smith*, 208 F.3d at 17 ("[P]roper calculation of Section 2244(d)(2)'s tolling provision excludes time during which properly filed state relief applications are pending *but does not reset the date from which the one-year statute of limitations begins to run*." (emphasis added)). The State argues that ignorance of the law or lack of experience is not a basis for equitable tolling, and that in any case Hall was aware of the limitations period because the court directly

addressed timeliness in dismissing Hall's 2009 habeas petition.  (Doc. 8 at 7–8.)  Hall

argues that he is not claiming ignorance of the "law" but only a "procedural rule," and

that "ignorance of rules is an excuse when dealing with pro se [litigants]."  (Doc. 9 at 3.)

It is true that *pro se* litigants are accorded "special solicitude" due to their lack of

legal training and experience.  *Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010).

That solicitude takes a variety of forms, and includes "leniency in the enforcement of . . .

procedural rules."  *Id.*  However, "*pro se* status does not in itself constitute an

extraordinary circumstance meriting tolling."  *Doe v. Menefee*, 391 F.3d 147, 175 (2d

Cir. 2004).  Ignorance of the law is also not an extraordinary circumstance.  *See Worsham

v. West*, No. 05 Civ. 530(DAB), 2006 WL 2462626, at *2 (S.D.N.Y. Aug. 23, 2006)

("Mere ignorance of the law does not qualify as an extraordinary circumstance

warranting equitable tolling in habeas cases.").  Ignorance or misunderstanding of

procedural rules is similarly not an extraordinary circumstance.  *See Francis v. Miller*,

198 F. Supp. 2d 232, 235 (E.D.N.Y. 2002) (rejecting argument that *pro se* petitioner's

ignorance of "the law and legal procedure" amounted to an extraordinary circumstance).

Hall's alleged misunderstanding regarding the limitations deadline is not a basis for

equitable tolling.  Hall's belief that the limitations period did not begin until after a PCR

case was instituted is not a basis for equitable tolling.  *See Bear v. Fayram*, 650 F.3d

1120, 1125 (8th Cir. 2011) (plain language of AEDPA limitations period supplied

necessary information).

### B.      Cause of the Delay in Filing the State-Court PCR Case

As discussed above, Hall asserts that the Defender General's Office and the PRO caused the bulk of the delay in bringing his PCR case by not informing him how to proceed.  To the extent that Hall asserts that the PRO's alleged failure to inform him how to proceed might warrant equitable tolling, the court should reject that argument.  Hall's assertion does not constitute an extraordinary circumstance that prevented timely filing. *See Laws v. Vermont*, No. 5:10-CV-306, 2011 WL 2642945, at *5 (D. Vt. May 16, 2011) (alleged conduct that did not constitute an "impediment" under 28 U.S.C. § 2244(d)(1)(B) also did not warrant equitable tolling), *adopted* 2011 WL 2581753 (D. Vt. June 29, 2011).

## III.    Actual Innocence

Hall vociferously asserts that he is actually innocent.  (*See* Doc. 9 at 1 ("I'm innocent of the charges against me . . . ."); *see also* Doc. 12 at 1 ("I'm a person; a good person; an innocent person with regard to the criminal charges against me.").)  It is true that "a credible and compelling showing of actual innocence under the standard described by the Supreme Court in *Schlup* [*v. Delo*, 513 U.S. 298 (1995)] and *House* [*v. Bell*, 547 U.S. 518 (2006)] warrants an equitable exception to AEDPA's limitation period, allowing the petitioner to have his otherwise time-barred claims heard by a federal court." *Rivas*, 687 F.3d at 518.  This is a "demanding" standard that "permits review only in the extraordinary case." *Id.* at 542 (internal quotation marks omitted).

"For the claim to be 'credible,' it must be supported by 'new reliable evidence— whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical

physical evidence—that was not presented at trial.'" *Id.* at 541 (quoting *Schlup*, 513 U.S. at 324). "Where the defendant pleaded guilty (as in the instant case), and therefore did not have the evidence in his case evaluated by a jury, the standard nevertheless remains the same—*i.e.*, the petitioner still must show that, 'in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him.'" *Lucidore v. New York State Div. of Parole*, 209 F.3d 107, 114 (2d Cir. 2000) (quoting *Bousley v. United States*, 523 U.S. 614, 623 (1998)). "For the claim to be 'compelling,' the petitioner must demonstrate that 'more likely than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt—or to remove the double negative, that more likely than not any reasonable juror would have reasonable doubt.'" *Rivas*, 687 F.3d at 541 (quoting *House*, 547 U.S. at 538).

Here, Hall has presented no new evidence, although in the course of his arguments he has summarized what evidence he says he would offer. First, he states that he was lying when he acceded to his wife's accusations that he had sexually abused their daughter. (*See* Doc. 9 at 6; Doc. 12 at 2.) According to Hall, his wife had threatened to disappear with their kids and accuse him publicly if he did not agree with her allegations. (Doc. 9 at 6.) Hall says that he told his wife what she wanted to hear, and they stayed together for four more years before he found out that she was cheating. (Doc. 12 at 2–3.) At that point, things had "come to a head," and Hall says that, because of his wife's threats to "ruin" him, he got on the phone with the Department of Children and Families ("DCF") and "repeated for the police what my wife had coerced me to say." (*Id.* at 3.)

Hall makes the following additional assertions.  Soon after his arrest, both he and his daughter "independently but simultaneously strove to clear my name by admitting to numerous witnesses that I did nothing wrong and that the whole disaster was engineered by my wife." (*Id.* at 4.)  Hall also states that his daughter gave testimony at a deposition in which she stated that she did not remember being sexually assaulted; that "she thinks it happened only because other people have told her that it did"; and that she remembered lying to the police in her original complaint.  (*Id.* at 5.)

Also according to Hall, the polygraph examination that his defense attorney had arranged was "bizarre" and a "sham." (*Id.*)  Hall says that he has never been able to review the results from that polygraph.  Hall now says that he has taken a second polygraph examination, which he says "certifies that I'm telling the truth about being innocent of all the crimes I've been charged with." (Doc. 9 at 10.)

None of the above assertions satisfy the demanding standards of *Schlup* and *Bousley*; they are neither credible nor compelling.  The alleged new polygraph results would not be admissible as evidence.  *See United States v. Kwong*, 69 F.3d 663, 668 (2d Cir. 1995) (court unwilling to hold that polygraph results are admissible under Fed. R. Evid. 702).  No affidavits have been presented to the court.  Hall has not supplied a copy of his daughter's deposition testimony, and in any case his assertions about the content of that testimony are insufficient.  Hall does not specify what lie his daughter allegedly told the police, and her own alleged inability to recall the sexual assault does not prove that no assault occurred.  Finally, Hall's own assertion that he was coerced and lying when he told DCF that he had sexually abused his daughter would not meet the *Schlup* standard

even if it appeared in a sworn affidavit.  Aside from being self-serving, Hall's assertion does not make it likely that a reasonable juror would have reasonable doubt.

Hall's assertions amount to "little more than speculation with slight support." *Wood v. Bartholomew*, 516 U.S. 1, 8 (1995) (per curiam).  His conclusory allegations of innocence are unsupported by any credible evidence, *Schlup*, 513 U.S. at 324, let alone new evidence sufficient to make a colorable showing that a reasonable juror would have a reasonable doubt.

## IV.   Hall's Motion to Appoint Counsel

If the court adopts the above recommendations, Hall's Motion to Appoint Counsel (Doc. 10) should be DENIED as moot.

## Conclusion

For the reasons set forth above, I recommend that Respondent's Motion to Dismiss (Doc. 8) be GRANTED and Hall's Motion to Appoint Counsel (Doc. 10) be DENIED as moot.  Accordingly, Hall's Petition (Doc. 1) should be DISMISSED.

Dated at Burlington, in the District of Vermont, this 24th day of September, 2014.

/s/ John M. Conroy_____
John M. Conroy
United States Magistrate Judge

Any party may object to this Report and Recommendation within fourteen days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections which shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b)(2); L.R. 72(c). Failure to timely file such objections "operates as a waiver of any further judicial review of the magistrate's decision."  *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).